PER CURIAM.
This cause is before us on an amended, supplemental petition of The Florida Bar, charging Respondent with the unauthorized practice of law. This petition is filed pursuant to Article XVI of the Integration Rule of The Florida Bar, and this Court has original, exclusive jurisdiction to consider the matter.[1]
*755 Haying issued its Amended Rule to Show Cause, this Court directed that Judge Henry L. Balaban act as referee and that he hold such hearings and take such testimony as necessary to establish the facts of this case. Judge Balaban has filed this report, which reads in pertinent part as follows :
“Upon stipulation, of counsel and the evidence presented, the referee makes the following findings of fact:
“1. That the Respondent was the subject of unauthorized practice of law litigation in the case of The Florida Bar v. Lucille E. Moran, 273 So.2d 390 (Fla.1973). In a per curiam opinion, the Supreme Court of Florida determined that Respondent had engaged in the unauthorized practice of law:
‘The unauthorized practice consisted of her distribution and use of business cards bearing these words: “Independent Bar Association of Massachusetts, Lucille E. Moran, Attorney-at-law, Specializing in Tax Defenses, P.O. Box 641, Tavernier, Florida 33070.” The Bar’s position is that the card falsely represents and suggests that she is an attorney licensed to practice in this state. We agree. Respondent is a resident of Florida; she appears to hold herself out for business here; she advertises that her specialty is tax defense work and that she is an attorney-at-law. The logical inference is that Florida permits her to practice.’ ”
Parenthetically, we note that case continued as follows:
“Although acknowledging in her response to the Rule that she had distributed the cards, respondent now states through her counsel that she does not intend to distribute the card in the future. Accepting this statement of cooperation as true, we are satisfied that the Rule heretofore issued should be discharged.”
The referee’s report continues :
“2. That the Respondent, a resident of Monroe County, Florida, is not and has never been licensed to practice law in the State of Florida or any other jurisdiction within the United States of America.
“3. That the Respondent is- not eligible to practice and has never been eligible to engage in practice before the Internal Revenue Service in federal taxation matters.
“4. That the Respondent has communicated by letters and through various documents (see The Florida Bar’s Composite Exhibit A) with officials of the Internal Revenue Service on behalf of federal taxpayers wherein the appellation ‘counsel and attorney’ were utilized in conjunction with her name. In addition, said correspondence and documents make specific reference to the ‘Independent Bar Association of American and Independent Bar Association of Massachusetts’ and contain either of two Florida return addresses, to wit: Post Office Box 187, Islamorada, Florida 33035 or Post Office Box 641, Tavernier, Florida 33070.
“5. That Respondent has submitted various documents of a legal nature (see The Florida Bar’s Composite Exhibits A and B) to officials of the Internal Revenue Service on behalf of federal taxpayers including ‘Summons,’ ‘Subpoena(s) Duces Tecum,’ and ‘Demand(s) for Immunity.’ Again, a Florida return address of either Post Office Box 187, Is-lamorada, Florida 33036, or Post Office Box 641, Tavernier, Florida 33070, was imprinted on said documents.
“6. That the Respondent has corresponded with officials of the Texas Employment Commission and a jurist of the state of Texas on behalf of a ‘client’ via letters and assorted documents (see The Florida Bar’s Composite Exhibit B) *756 which utilize the appellations ‘counsel and attorney,’ ‘Independent Bar Association of Massachusetts,’ and ‘Independent Bar Association of America’ together with either of two Florida return addresses to wit: Post Office Box 187, Is-lamorada, Florida 33036 or Post Office Box 641, Tavernier, Florida 33070.
“7. That the above described correspondence and documents contain language suggesting that Respondent represented the legal rights and interests of the persons on whose behalf the letters were written.
“Based on the foregoing findings of fact, the referee has reached the following conclusions of law:
“1. That by utilization of the terms ‘counsel and attorney’ and ‘Independent Bar Association of America’ and ‘Independent Bar Association of Massachusetts,’ Respondent’s letters and documents as described above create the reasonable impression and suggestion in those to whom they are conveyed that she is licensed to practice law in the State of Florida and has undertaken the legal representation of federal taxpayers in conjunction with their legal problems.
“2. That the utilization of the above described appellation constitute a holding out by Respondent of authorization to engage in the practice of law. See. e. g., The Florida Bar v. Frank M. Joyce, 299 So.2d 27 (Fla.1974), The Florida Bar v. Lucille E. Moran, 273 So.2d 390 (Fla.1973), and Petition of Kearney, 63 So.2d 630 (Fla.1953).
“3. That by her communications and submission of legal-type documents to the Internal Revenue Service, Texas Employment Commission, and judicial officials, Respondent has ‘represented’ persons as an advocate, and further, has expressly and impliedly suggested that she is a licensed Florida attorney.
“4. That the utilization of the above described appellations in conjunction with Florida return addresses on letters and documents also suggests and creates the impression that Respondent is a licensed Florida attorney.
“5. That the contents of the various letters and documents expressly and impliedly suggest that the, Respondent is the legal representative of the individual on whose behalf the letter or document was submitted.
“6. That the writing of letters to the Internal Revenue Service on behalf of federal taxpayers concerning their tax problems and/or controversies constitute ‘legal representation’ and the unauthorized practice of law in this state.
“7. That there is no issue of federal pre-emption in this matter by virtue of the fact that Respondent is not eligible to engage in the practice of federal tax law before the Internal Revenue Service and further has never been so eligible.
“8. That by the above described activities, Respondent has engaged in the unauthorized practice of law in this state.
“Based on the above findings of fact and conclusions of law, the undersigned referee makes the following recommendations for final disposition of this cause:
“1. That Respondent be permanently enjoined from calling herself ‘Counsel and Attorney,’ ‘Attorney-at-Law,’ and from using any appellation which expresses or impliedly suggests that she is licensed to engage in the practice of law.
“2. That Respondent be permanently enjoined from using the terms: ‘Independent Bar Association of America’ and ‘Independent Bar Association of Massachusetts’ or any similar terms which express or impliedly suggest that she is a member of the bar of any jurisdiction in the United States of America.
*757 “3. That Respondent be permanently enjoined from holding herself out as a licensed attorney by the use of the above described or any similar appellations in conjunction with a Florida return address in any correspondence, documents or papers.
“4. That Respondent be permanently enjoined from giving legal counsel and advice to others concerning federal tax matters unless and until she is eligible and admitted to practice before the Internal Revenue Service in such matters.
“5. That Respondent be permanently enjoined from writing letters and submitting documents on behalf of federal taxpayers to the Internal Revenue Service in conjunction with federal tax matters that are not personal to her.
“6. That Respondent not be found to be in contempt of this Court by virtue of the cooperation expressed through counsel and the willingness of Respondent to abide by the order of this Court issued in this cause.”
The record and report of the Referee have been examined by this Court, and we agree that the foregoing conduct constitutes the unauthorized practice of law by Respondent.
After the filing of this report Respondent advised her attorney in a telephone communication that his services were terminated and that she would conduct her own defense in the future; upon motion of counsel to withdraw, this Court in an abundance of caution granted the motion with an additional two weeks granted Respondent so that she might file any objections she had to the Referee’s findings and might obtain new counsel. Thereafter, Respondent filed in this Court a copy of a nine-page letter to her former attorney, specifying that this letter “incorporates, by reference,” all of her objections to the Referee’s report; from this letter and others filed herein, it is clear that Respondent intends to represent herself in this matter without help of additional counsel.
In letters filed herein Respondent exhaustively presents her position, clearly showing that she neither respects the earlier decision of this Court[2] nor the recent findings and conclusions of the Referee, as given above. Further, she makes plain her resolution not to abide by these determinations. So that there can be no question of misinterpreting Respondent’s position, we quote pertinent portions of her letter to her former attorney, as filed in this Court:
“You have asked what I think about these HERESY proceedings at this stage of the game:
“I say, quite frankly, ‘NOT MUCH’. Perhaps this is because I DO NOT respond with religious AWE the way I am supposed to — OR do my part to make sure these SHAMS work. I leave such things to people with neither Far Sight —NOR Hindsight. And that can be chalked up to the fact I’m neither a chauvinist NOR a sychophant. I’m a Christian! How can I possibly be a respecter of persons* — and an Iconoclast (image-breaker) at the same time? And, if you think I CAN — or SHOULD BE — you have made a bad mistake. You are judging me by your own standards —NOT by what you KNOW to be mine.
“You have endeavored to mislead me with the idea you SPOKE for me and represented MY position. But, on December 2, 1974 you DID NEITHER. You deliberately conveyed false impressions to me about the basis of your game-plan and the effects it would have on me when you played it out. This was your way of slyly selling me out. You SPOKE ONLY FOR YOURSELF by *758 pretending I was willing to concede even one inch to the Opposing Team, (which, of course, always includes one of their own PARTISANS refereeing the match.) You made it appear I believed myself ‘guilty’ of some kind of cognizable ‘offense’; was contritely CONFESSING my ‘HERESIES’ through you AND would therefore meekly accept whatever PENANCE the Tallahassee HOLY OFFICE deemed meet and just in the premises.
“The transcript of the December 2, 1974 closet ‘hearing’ AND Reverend Balaban’s Report clearly support the foregoing.)
“You are reminded THAT if I wanted to unburden myself of HERETICAL guilt by confessing my SINS I sure as heck wouldn’t need any middle-man to do it for me. I could do THAT all by myself — without spending one red cent OR imperiling my INDEPENDEN-CIES, LIBERTIES — OR FREEDOM. I’d simply go to the local Catholic Church and confess my Offenses to the parish priest. There, at least, I would be treated with the respect due Free born Americans. Not only would I be ALLOWED to speak my piece DIRECTLY to the Priest, I WOULD BE EXPECTED TO DO SO — in order that I might fully relate and discuss with him the nature, premises and motives of my imagined ‘transgressions’.
* * * * * *
“Aside from NOT needing an interpreter to draw him pictures — [my Catholic Confessor] would then do EXACTLY as the Rt. Reverend Balaban has done and for EXACTLY the same reasons. He, TOO, would defer declaring my PENANCE — until he explained the conditions surrounding my HERESY, and make his recommendations to his HOLY OFFICE companions so they might have the ‘privilege’ of determining my PENANCE. Then, IF my Iconoclastic disposition warranted EX CO-MUNI CATION —they would have the ‘honor’ of declaring EX CATHEDRA the degree and extent of punishment needed to bring me into line OR — ordering me PURGED as an example to OTHERS. (I DON’T think I’m mistaken in saying that the priests and bishops and Popes of the Roman persuasion ARE ALL CATHOLICS — AND that Florida’s counterpart heirarchy are ALL BAR MEMBERS.)
* * * * * *
“Upon reading Reverend Balaban’s report and the moves you anticipated making, I re-read the transcript and sadly concluded I must relieve you of further responsibility in this matter. To allow you to continue along the course you chose to take in December 1974 would have ripped me off and eventually shut me down completely. You were proceeding under the fallacy MY RIGHTS are subject to negotiation by EBB [Entrenched Bench-Bar] dudes who can alter — or dispose of them to meet their pleasure and convenience. Now you should know I DON’T BUY THAT! But, since you share the advantage of the same religious cultural insights I do, and I have personally defined my position to you in a variety of ways — IT WAS UP TO YOU to tell them I NEITHER ACCEPTED their PREMISES —NOR THEIR TERMS. Then this entire matter could have been properly argued from a broad base of Constitutional principles rather than assuming a narrow, parochial stance to avoid challenging the status quo. Since you proposed to duck telling them THAT I view these things as ABRIDGMENTS of my Free Exercise of Religious beliefs AND my Right to REVOLT, PROTEST and DISSENT against the oppressions and corruptions fostered by entrenchment, I HAVE TO DO IT MYSELF.
“So it becomes my job to disabuse this Inquisitorial team of their conspicuous *759 and inexcusable IGNORANCE of some of the more fundamental differences between the British (and other European) ecclesiastical RULE OF MEN schemes —AND the American RULE OF LAW strategy. . . .
* * * * *
“History further records that combination of ingredients RESULTED in the MOST SUCCESSFUL scheme for coercing entire communities into submissive accommodation to the conceits, arbitrary whims and self-serving notions of ‘LAW’ — ever DEVISED by any entrenched Ministerial consortium. From this, it should be obvious that Advocates and Prosecutors of the Mediterranean Inquisition WERE NOT SPEAKING FOR the community of average people. They were speaking ONLY FOR THEMSELVES and their chauvinist hitmen and camp-followers. Just like EBB [Entrenched Bench-Bar] actors do today.
5k * * * * *
“And, Article 10 of the New Hampshire Constitution entitled RIGHT OF REVOLUTION expresses my sentiments — especially where it says:
‘. . . whenever the ends of government are perverted, and public liberty manifestly endangered, and all other means of redress are ineffectual, the people may, and of right ought to reform the old, or establish a new government. The doctrine of nonresistance against arbitrary power and oppression, is absurd, slavish, and destructive of the good and happiness of mankind.’
“These Articles DO NOT SOUND exactly like LOYALTY OATHS to the status quo of COME-LATELY Entrenched Bench-Bar Associations of any State.
* * * *
“Since the First Amendment ENJOINS Catholic prelates from carving up my Right to MAKE and EXERCISE Free Will Choices — where does any other group of associates get the idea they can step in and take up where Roman clergy left off? What Constitutional provisions transfers to another partisan group LICENSE to expediently encumber or dismember my inhering entitlements' to fully exercise my volition? And, where does the U. S. Constitution empower partisans to contrive statutes and canons for deliberate purpose of INTERFERING with or DEFEATING my inborn rights to provide themselves a means for ENFORCING their Objections to the way I express MY FAITH ?
“If Catholic clerics have NO LICENSE to enforce their DISAPPROVAL when I made the Free Will decision to become a PROTESTANT MINISTER — and hence, NO LICENSE to enforce their RESENTMENT at my defying their authority — by invoking the PROTESTANT ETHIC — to openly compete with them — other partisans will have to come up with more than a demonstration of their parochial stance if they expect to STOP me defying their ‘authority’ to eliminate the competition. . .
Inasmuch as Respondent, by her own admissions, has shown beyond a reasonable doubt that she has willfully continued her unauthorized practice of law and intends to do so in the future, we adjudge her to be in contempt of this Court and order that she is to be imprisoned in the Monroe County jail for a period of sixty days. The sentence of imprisonment is suspended on the condition that she desist from engaging in the practice of law. Upon a satisfactory showing by The Florida Bar that the Respondent has violated *760 the condition of this suspension then in that event the sentence of confinement shall with the approval of this Court become operative. Provided further that in any event The Florida Bar shall report to this Court one year from the date of this opinion as to whether or not it has found any evidence of a violation and if none then in that event the sentence shall be vacated and the cause dismissed.
It is so ordered.
ROBERTS, Acting C. J., and BOYD, OVERTON and ENGLAND, JJ., concur.
McCAIN, J., dissents.

. Article V, Section 15, Florida Constitution.

. The Florida Bar v. Moran, 273 So.2d 390 (Fla.1973).

 Romans 2:11.